May it please the court, your honors, my name is Jason Mettinger on behalf of the United States. Your honors, Maryland robbery is a violent felony. It satisfies the force clause in the Armed Career Criminal Act, which is found in 18 U.S.C. 924 E2B. And we know this, your honors, for a host of reasons. We know this principally because of Maryland precedents, which have construed Maryland robbery consistently as a violent felony for the last 193 years consistent with common law. We also know this from the logic and the reasoning of the Stokeling case, which is the recent Supreme Court decision that construed Florida robbery, but essentially it found that if it satisfies the common law, it will be satisfying the force clause. We also know this from this court's recent decision in Dinkins, which overruled its prior holding in Gardner and found that North Carolina robbery was a violent felony. So we do respectfully ask this court to reverse with regard to the district court's finding on Maryland robbery and that we ask this court to find it a violent felony. We also ask respectfully that this court would reverse the district court's finding on Maryland possession with intent to distribute. We would ask that this court would find that it is a controlled substances offense under 4B 1.2 of the guidelines. And we say that because if you look at the Maryland quid statute, it tracks almost perfectly what the guidelines say. And so we do respectfully submit that they're a categorical match, and so we do ask this court to reverse on that ground as well. So your honors, I'd first like to start with Maryland robbery, if I could. And if you look at what Johnson said about the force clause, it does require force capable of causing physical pain or injury to another. And we respectfully submit that if you look at the Maryland precedents, that's exactly what it says. In other words, if you look at the West case, it says actual violence implies personal violence. And that implies any injury to the person or if he resists, that that resistance is then overcome. So we think West can and should answer this question. We also respectfully push back on the defense's arguments about whether de minimis force is possible under Maryland robbery. We respectfully submit it's not. And we say that because all you have to do is compare the West case and the Cooper case where you had de minimis purse statching, that was found to be not enough, and compare and contrast that with the Rayford case. And so there's this clear delineation in Maryland law that says if you have de minimis force, it's not going to be enough. And that, I think, shows that we fall on the violent felony side of this line. We've also cited the Wilson case that this court decided in 1991. And I'm happy to address that case. It is a published opinion from Judge Wilkinson. And we do think it says quite expressly that Maryland robbery has an element that use or threatened use of force. That's a published opinion of this court. And I don't think that any subsequent cases have undermined the reasoning of it. And so we do respectfully submit that that's also additional authority here. We also would just note that the district court in Maryland certainly has been very consistent on this issue. We now have five decisions from four different district court judges on this issue. Judges that are very familiar with Maryland law, construed Maryland law, and sided with the government. This decision is the only one I'm aware of in our court that's gone the other way. There's also some other just interesting facts about Maryland law that I think push us in the direction that we have postulated here. And I've tried to look at this, frankly, from every angle. And in my view, any way you slice it, every angle that you look at it, it all points at Maryland robbery being a violent felony. And so there's these other sort of clues that we have. And one of them is, how does Maryland courts construe some of their elements? Well, they look to federal bank robbery. We've included that in our brief. And this court has found in Doctor that if a state puts its robbery statute in peri materia with federal bankruptcy, federal bank robbery, pardon me, that that is a clue that we should find that it is a violent felony as well. And Maryland law has done that. In the Cole case and the Dixon case, they say we're going to bring ourselves in line with federal bank robbery law. So that's another indicia of this being a violent felony. The other sort of unique fact about Maryland law is that it actually is defined in Maryland code as being, quote unquote, a crime of violence. And that's an interesting turn of phrase. It certainly wasn't by accident in our view. In other words, the Maryland legislature is telling us Maryland robbery is a forceful, violent crime. And if you look at this Timoney case that we cited, it's a Maryland court of appeals from 1981. It described what kind of crime you have to be in order to get in this category. And it said, these are crimes that actually involve force or violence. So we do submit that we have some additional clues to make us absolutely certain that Maryland robbery is a violent felony. You also, obviously we look to the decisions of the highest court of the state in defining the elements of the offense in this case. And you pointed to the West case. Your friend over on the other side obviously pointed to the Snowden case, suggesting that armed robbery is a compound offense, which includes larceny and common law battery. And then he points to Curtis, suggesting that common law battery is not enough. I gather you dispute that, but if we find that there is at least some confusion in the case law, shouldn't the defendant get the benefit of the doubt with respect to that confusion? So, Your Honor, I guess what I would respectfully submit is there actually is no confusion. And I take the point that if there is confusion, this court would have to deal with it and make a determination. But if you actually look at the cases, it's over and over and over again, and we'll talk about the Snowden case in a second. But they define Maryland robbery unequivocally as you have to do it by violence or by putting in fear. And that is exactly what the common law standard is. And Stokelyn said if you're under the common law standard, you're a violent felony. The Snowden case, I really do want to be very clear about it. We do disagree with the gloss that's put on it by my colleague. And what I would respectfully submit is if you look at that case immediately before the passage that they cite, which does use the word battery, they cite, in fact, the same standard that I just gave you, the idea that in the Coles case, you have to have violence or putting in fear. So, in my view, Snowden does not rewrite Maryland law or lower the standard in any stretch. It actually is citing what has been cited for the last almost 200 years. But the other thing that I want to point to the courts of pension... I'm sorry. Can you say that to me again? Your distinction, your whatever it is you have to say about Snowden? Certainly are. So if you look at the sentence right before the one in Snowden that my colleague cites, it actually parrots the language from the Coles decision and says precisely robbery is something that you commit by violence or threat or intimidation. So in other words, Snowden isn't announcing a new paradigm. Snowden is saying consistent with all these other precedents, this is what Maryland robbery is. And then what's the next thing? So the next thing it does is then it breaks that down, as Judge Diaz said, that yes, it is a compound larceny. And it does define the force element as battery. And then it puts in parentheses violence. So it's showing you it's not the misdemeanor battery that they're talking about in Johnson. What they're talking about in the Snowden case is violence. And violence, they're triggering back to all those other precedents that violence is violent felony-like force. The other thing that I'll just point out for the court, time and time again in Maryland precedents there's been this idea of like, well, let's lower the force requirement or let's make it more flexible. That's in some of the case decisions. And I think it's the Spencer court that talks about it. Maryland courts have pushed back on that. And they've said, no, we are going to maintain Maryland robbery as consistent with the common law. That's the way we've always been. That's the way we're going to stay. And if you look at what Stokelyne said, Stokelyne said very clearly, if your robbery statute coincides with the common law, it's going to be a violent felony. And so I think, frankly, unfortunately, the district court didn't have the benefit of Stokelyne when it came out. But I do respectfully submit that once Stokelyne came out, it actually makes this a much easier determination. So unless there's any further questions about Maryland robbery, I would like to move on briefly to the Maryland PUID statute, if I could. So moving on to that statute, Your Honor, we do respectfully submit that that is a controlled substances offense. And on that, I think all one has to do is actually look at the Maryland code provision. If you just look at 5-602, it defines what a Maryland PUID is, and then compare that with 4B1.2, the definition of a controlled substances offense. What did you call it? Did you say PUID? Is that what you said? PUID. Sorry, Your Honor. Okay. Maryland possession with intent to distribute. Got it. This is a colloquialism. For future reference, I hate acronyms. Oh, you do? I apologize, Your Honor. I'm with Judge Motz on that one. Fair enough. Especially if it's PUID. It doesn't even sound right. A little cacophony, Your Honor. I'm going to sound like QUID. We will say Maryland possession with intent to distribute, and I'll try not to mangle all those words. If you look at Maryland possession with intent to distribute, we have statutory definitions. So you look at 5-602, that language is indistinguishable from the guideline standard. And so there's just simply no daylight there. And if they're a categorical match, Maryland possession with intent to distribute has to be a controlled substances offense. Now we also can get deeper into the weeds, and I'm happy to do so, if you look at the definitions behind that statutory definition. That's in 5-101. They define what you have to do to be found guilty of Maryland possession with intent to distribute. And it doesn't have the kind of language that my colleague suggests is all important to his argument. And I want to address it just directly. In order for my colleague's view of the law to prevail, Maryland law has to outlaw an offer to sell, essentially without the intent to distribute. And I've kind of puzzled over it, to be honest. But I think this Court doesn't need to get metaphysical about it. All we need to do is, frankly, just look at the statutes and look at the definitions, and those offer to sell words are just simply not there. And so to rule for them, I think this Court does have to read language into the statute that isn't there, and I don't think we're permitted to do that. It is a bit strange that some other jurisdiction statutes do sort of include that in their definition, because it would suggest almost a bit of a contradiction in the intent element. It does, Your Honor, and I puzzle over it myself. But if you look at the cases that do go that way, and specifically Hinkle out of the Fifth Amendment, specifically the Hinkle statute, they actually do say an offer to sell shall be included in what the term deliver is. Again, I could quibble with the idea that I think what they mean there actually is an offer to sell with the present intent to actually distribute, and not just do an offer to sell in the ether without the intent to distribute. We don't need to go there, obviously. Texas law isn't in front of this Court right now. But I just think if you look at that statute and look at that case, I don't know, let's just say it this way, I think there's ways to suggest that it's not what it says it is. But we don't even need to get there, because that language that was important in Hinkle just isn't here in Maryland law. And we cited the Anderson case and the Holloway case to suggest that that intent to distribute is actually the element. And I think at various parts of my colleague's brief, he says, well, the intent really is intent to offer, and you can have an intent to offer without an intent to distribute. I believe that's wrong under Maryland law. I do actually think under Anderson and Holloway, you do have to have this intent to distribute. And again, we respectfully submit it's right there in the statute. It's Maryland possession with intent to distribute. That's the crime. We also have an unpublished opinion from this case that says the Maryland possession with intent to distribute statute is a controlled substances offense. Obviously, it's an unpublished opinion, but I do think it's something this court can look to. That case is also named Wilson. That was from 2014. And then there's a number of other arguments that we've made here, but we do just want to sort of step back and look at a 30,000 feet view. We do respectfully submit that if you just look at the elements and just look at the statutes, this one is very clear that a controlled substances offense under the guidelines is exactly what Maryland present with intent to distribute. Do the Maryland state trial courts actually instruct a jury that a mere offer to sell would satisfy the elements of the statute? So they do not. If you look at, in our view, the Maryland pattern jury instructions, those in our view are what the authoritative jury instructions are. I want to be clear, in some instances, some courts do use the Aronson instructions, which is what my colleague is relying on. But in our view, those words, offer to sell, are actually not in any instructions. If you look at the Maryland pattern of jury instructions, it's certainly not there. And what the MP, I won't use an acronym, what the Maryland pattern jury instructions do is they track essentially 5-101. They use exactly the definition of what a distribution is. So certainly not in the Maryland pattern jury instructions are those words ever uttered. Now in the Aronson side that my colleague relies upon, it doesn't actually say that either. In other words, it talks about how you can deliver a controlled substance, and it says that you can do that when drugs are sold, and then it defines how you can sell drugs. And it says you can sell drugs through bartering, transferring, or offering them for money. And in other words, in our view, we think that modifies that the drugs were sold. In other words, there was a distribution. It wasn't just a, I'm going to offer you drugs, but not actually intend to give them to you. So we think even under their instructions, this survives. So Your Honor, I see the red light is on, so I think I'll cede the rest of my time for rebuttal. Or reserve the rest of my time for rebuttal. 14, 15, yeah. Actually, you have no time, but we do have rebuttal. Thank you, Your Honor. May it please the Court. In Maryland, robbery is a compound crime consisting of a common law larceny and a common law assault and battery. Maryland's highest court has construed the assault and battery component of robbery to require only an offensive touching. Under Curtis Johnson, Stoeckling, and this Court's en banc decision in aparecio seria, Maryland robbery cannot qualify as a violent felony under the ACCA because it may be committed using only an offensive touching. With the Court's permission, I'd like to focus the balance of my time on the robbery issue, and I'll discuss the other issues in the cross-appeal if time permits. The government focuses here, as well as in its briefs, myopically on the fact that Maryland for many, many years has defined robbery as having as an element violence or the threat of violence against a victim. We agree that that's the correct formulation of the elements, and indeed that's what Snowden says the elements consist of, but that begs the question of what quantum of force is needed to satisfy the violence prong or the threat of violence prong in Maryland. We know the answer to that question because the Snowden Court has told us. It's a merger case which is identical to the Maryland Court of Appeals case that this Court was examining in aparecio, and it started its analysis in Snowden by saying we have to scrutinize the elements of robbery and assault and battery. And in doing so, the Court made very clear that robbery is a compound crime. It consists of two offenses committed simultaneously or close in time. One of which, the force part, the violence part, is an assault and battery, which this Court has said in Carimi v. Holder and United States v. Royal does not qualify as sufficient force under the ACCA to satisfy the violent felony. Now the government's principle response here on Snowden is that it should be ignored for a couple reasons. First off, they point to the fact that immediately prior to the section of the case talking about how robbery is a compound crime, it uses the same language of West v. State and Rayford and Cooper and all these other cases. Again, we agree that Maryland robbery requires as an element the use of violence, but that doesn't answer the question of what quantum of violence is needed. And I think it is stunning that in the government's two briefs that it filed with this Court, and again today at argument, the government has offered no response to this Court's decision in Aparicio, which dealt with a Maryland Court of Appeals case in the identical procedural posture. Nicholas v. State was a case where the Maryland Court of Appeals was examining whether assault and battery merged with the greater offense of resisting arrest. Does Stoeckling affect our reasoning in Aparicio? It does not, Your Honor, for two reasons. But before I dive into distinguishing Stoeckling, I want to make something clear. My colleague has said that Stoeckling said that any state that defines robbery consistent with common law means that that robbery is a violent felony. That is not what Stoeckling held. Robbery is a common law crime in many, many states, and states under the categorical approach are entitled to define the elements however they see fit. What Stoeckling said, the limitation of its holding, is on the first paragraph. This case requires us to decide whether a robbery offense that has as an element the use of force sufficient to overcome a victim's resistance necessitates the use of physical force under the ACCA. The government has never argued, not below and not in its briefs and not here today, that overcoming a victim's resistance is an element of Maryland robbery. Just to the contrary, the government has insisted that the element we have to focus on is the use of violence. And again, we agree. So we don't have the identical situation here in Stoeckling. And to answer your questions as to whether or not that impedes or affects the decision in Aparicio, Stoeckling was very clear that its holding was consistent with Curtis Johnson's statement that a mere offensive touching does not qualify as physical force under the ACCA, regardless of whether we're talking about robbery, resisting arrest, or some other crime. Excuse me. On the other hand, it does suggest that any force that is sufficient to overcome even the slightest resistance is enough to meet the test. So how do we factor that into this analysis, given that you've indicated that robbery in Maryland is a compound offense that includes assault and battery? Right. But we disagree. And again, I don't think the government has ever argued that overcoming a victim's resistance is a necessary method of committing robbery. Certainly, it is often the circumstance that that is the way that the violence element is going to be satisfied. But the government cites the Cooper case here. I actually think it's a really helpful case. Because what the court says in that case is, well, the evidence here suggests that maybe the assailant put his hand on the victim's back. But the evidence is too speculative. We can't affirm on that basis. So the court didn't just vacate the conviction. It actually remanded the case back to the trial court to give the government another opportunity to substantiate its claim that there was an offensive touching with the hand on the back of the victim and that that would have qualified in Maryland to satisfy the force element. Another thing that Cooper says is that a hand around the neck in the course of picking someone's pocket would be sufficient to qualify as robbery. Again, this is the Cooper case that gets pulled forward into Rayford, into West V State, and all the cases that the government cites. And I also want to emphasize, too, that we're not just relying on Snowden here. The government's own cases reflect the notion that assault and battery is an element of robbery and that it's defined consistently with common law. If you look at Spencer V State and Coles V State, these are two cases that the government cites extensively in its brief and named twice today. What each of those cases say, they're both analyzing the quantum of force needed to commit the assault or the intimidation prong of robbery, and they both incorporate the common law definition of assault in Maryland, which they pull from the Dixon case that my friend also cites, to require only any attempt to apply the least force to the person of another. Okay. Can I just go back to Judge Diaz's question, which I thought you pretty neatly sashayed away from. Well, let's sashay back to it. And I'm talking about Stokeling. Because Stokeling didn't exist at the time of sentencing and in the sentencing the government relied pretty heavily on our case in Dinkins, was it, which we've had to Dinkins is the one that redid it. Right. The North Carolina. Right. So I still am not really sure. I understand it's not exactly the same. It's not exactly the same issue with respect to the force. But Dinkins is 2019, 2018 Supreme Court case, and it surely gives us a signal about this, doesn't it, about force? Well, let me say first about Dinkins. When the government, prior to Stokeling coming down, when the government was having to deal with this court's precedent under Gardner. That's what I'm saying. You relied on Gardner. We relied on Gardner. Dinkins comes out and takes Gardner in because, reverses its stand on Gardner because of Stokeling. And my colleague asked you, well, what does Stokeling do here? That's where we are now. It doesn't have the same effect here. And let me start by saying when the government, before Stokeling came out, the government filed its opening brief and was having to distinguish Gardner, what it says on page 12 of its brief, is that all these cases turn on the idiosyncrasies of the particular state's law. And we agree with that assertion, and that's part of the reason we. Maybe my question has not been clear. I'm not saying to you that Dinkins controls here. I'm saying the reaction that we had with Dinkins, taking back our earlier case in light of Stokeling, suggests something to me. And that's why I'd like you to talk to me a little bit more about Stokeling in this case. What Stokeling says, and what I think that Dinkins' case suggests about Stokeling, is to the extent this court has held in prior cases, as it did in Gardner, that a state offense of robbery has as an element the overcoming of victim's resistance, then that has to be reconsidered in light of Stokeling. Because Stokeling said that if that's the case, if that's how the state defines its offense as requiring overcoming of victim's resistance, that satisfies the force prong. And so what this case and what this court in Dinkins said is, well, when we decided Gardner, that was the deciding factor for us. We based that decision on the fact that in North Carolina, all you need to do is overcome a victim's resistance, and they don't really care how much force it is. And our view at the time was that that wasn't sufficient. Stokeling comes out and says that if that's how a state defines its crime, then it actually does qualify as physical force under the ACCA. And Dinkins recognized that, I think rightly so. So the question in this case is whether or not Maryland robbery requires overcoming of victim's resistance in the same way that Florida robbery did in the Stokeling case, in the same way that North Carolina robbery does. And again, we've heard no argument, not before Stokeling, not after Stokeling, and not today from the government, that that's the case. The reason they argue that Stokeling applies here is because they say that Stokeling says that all common law robbery is a violent felony. We know that's not the case. Stokeling says in its first paragraph, and it later goes on to say it's not overruling Curtis Johnson, is very clear that the scope of the issue in that case is about overcoming the victim's resistance. And so once the government concedes here that overcoming victim's resistance is not an element of robbery, then all we're asking is what is the quantum of force needed to commit Maryland robbery. If it's offensive touching, Stokeling and Curtis Johnson both say it can't be a violent felony under the ACCA. And we know it requires only an offensive touching, not just because Snowden says so, but also because Spencer says so, because Cole says so, and because Cooper v. State says so. And these are all cases, other than Snowden, that the government relies on. And, again, I think what is most telling here is that the government has simply no answer to Aparicio. And, Judge Diaz, your question was, well, what do we do with Aparicio in light of Stokeling? The answer is the same to what we do with Dinkins, which is that if it's not an element, if it's not a crime that has as an element the overcoming of the victim's resistance, then Aparicio is still good law. And my friend on the other side has never argued that Stokeling impacts the weight or the precedential force of Aparicio. In fact, he hasn't offered any argument at all as to why Aparicio should not be followed in this case. I want to discuss just a few other points here. First is my friend's reliance on the United States. Can I ask you, at the risk of having you repeat your argument, but so you don't – obviously you don't think that West and Cooper somehow are – those cases are the better definitions of what robbery is in Maryland, or do you think that those cases are entirely consistent with your view that what we have here is an offense that doesn't meet the requirements of resistance? I think they're entirely consistent, and what we said earlier I think is true, is that it makes sense that state courts are going to look at – Well, there's no discussion among them about overcoming resistance. Excuse me, Your Honor? There's no discussion there about those cases, about that. And I think that's – I guess we all can read the cases and sort of come to our own conclusions about whether they're on point or not. But you don't do yourself a real service if you characterize cases – and I'll go back and read them differently than they are. Well, I agree that not all of them discuss overcoming resistance, and that's why they are – Then why do you make that – well, anyway, go ahead. Well, perhaps I haven't been clear. The issue is that those cases don't require resistance, and because they don't require resistance, it's not the same element that Stokelyne's looking at. Stokelyne is limited. Stokelyne says if you've got as an element overcoming a victim's resistance, then it's a violent felony. We know, though, from Snowden, from Spencer, which, as Your Honor's pointed out, doesn't talk about resistance, that that's not an element of Maryland robbery. So once the government concedes that it's not an element of Maryland robbery, and as Your Honor rightly pointed out, it's not discussed in many of these cases. It's not contained within the elements that these cases set forth for Maryland robbery. Well, your argument is that Maryland robbery requires only an offensive touching. That's right, Your Honor. Okay. So then you look at Snowden. Robbery is a compound larceny. It is a larceny from the person accomplished by either an assault, paren, putting in fear, or a battery, paren, violence. Right. Okay? And you say, what do you say about that? I say that that shows that when, at least in Snowden's view, when Maryland robbery requires violence, it's requiring a battery, and we know that that's not sufficient to qualify as a violent felony. And you say that because battery requires only an offensive touching. Right. So does Maryland robbery. That premise is sound, but the cases just don't bear it out. And that's what I was trying to get at you. In considering minimum conduct under the categorical approach, there must be a realistic possibility, not a theoretical possibility. So then you go look at these cases upon which you rely, West and Cooper, right? And in each of those cases, the court held that the defendant neither injured the victim nor overcame her resistance, not that any touching was inoffensive. And that's the piece that you want to have always incorporated into Maryland law, the last piece. And those cases don't say that. If you look at Cooper, I think it does say that because what the court says is, right, the government's argument in that case is, well, he took the money out of the pocket. And the court says that's not enough. And then the government says, well, but we've got this witness. The victim says, well, maybe he put his hand on my back. And the court says, well, maybe that's good enough. But the problem is the testimony itself, the evidence in the case, was too speculative. So what the court said is we're going to remand the case back to the trial court to give the government an opportunity to shore up that defect in its case, to substantiate the claim that there was a hand on the back. A hand on the back isn't overcoming resistance. A hand on the back isn't violent force. It's an offensive touching. And the other example that Cooper gives is a hand around the back of the neck while you pick the pocket. That is squarely in the realm of an offensive touching. And to your Honor's question about what a realistic probability is and how do we satisfy that standard here, again, I would direct this court to the Aparicio case where the government made this argument that said, well, you need to show an actual conviction. And what this court said is when you have a statement from the state's highest court. I know the Aparicio. Yeah, I suspect that you might. We do rely on it. But the court says if you've got a statement from the state's highest court, that's it. You don't need an actual conviction. We know that prosecutors can pursue this theory. And by the way, the formulation of the elements as requiring assault and battery in Snowden didn't come out of whole cloth. If you look at the first part of the opinion, that was what the state government proposed.  And the only dispute was whether or not the facts of that case showed that one assault was being considered by the jury as satisfying the robbery or whether it was not. So we know what the state government in Maryland thinks. We know what the Maryland Court of Appeals thinks is required. And under Aparicio and under Curtis Johnson and Stoeckling, that's all we need to resolve this case with respect to the robbery question. With the court's permission, I'm happy to answer any questions about possession with intent to distribute, but I'd like to spend the balance of my time just briefly on the cross appeal if I could. The government has all but admitted two essential evidence here. First, the government does not dispute that the district court was required, as a matter of law, to give a limiting instruction if the evidence related to marijuana was introduced under 404B. They have two responses here. One is with respect to waiver. We respectfully submit if you look at the record. It's just not going to bear out any evidence of waiver. Of course, Mr. Johnson stipulated to the admission of the evidence that that did not absolve the district court of its responsibility of giving the limited instruction required by this court. The other argument is about the intrinsic nature of the evidence, and I think we pretty effectively dispelled that by citing the United States v. Rytle Hoover case out of the Fifth Circuit. And, again, I think my colleague from the last case said, you know, one thing we can do in these cases is look to what the government said in the closing argument, and that's a pretty good indication of the theory of the case that was being pursued. And I think we can do the same thing here. The government says marijuana evidence was introduced as an intrinsic part of the crime. Well, here's what they said in the closing statement. The defendant possessed marijuana in addition to that firearm, drove away because he knew he was guilty of multiple offenses. That's at SJA 388. On SJA 393, he admits to crimes that he's not charged with. Our review here is for a plain error? We are here before this court on plain error, and the defense counsel did not object. But, again, the government has not disputed that there's an absolute rule that there must be a limited instruction under 404B. The only argument they've raised is that it's intrinsic evidence. And so if this court disagrees with that and finds that it's plain error, then the only question is substantial prejudice and injustice. On the convictions piece, I think it's a similar story. The government says, well, he testified about one conviction or three convictions, so he opened up the door to all of them. They don't have a single case to support that proposition. I think it would be a startling expansion of Rule 404, which is the case that they cite. They actually don't proceed under Rule 609. Well, on that second prong, though, not only did the defense counsel not object, but he affirmatively agreed with the notion that you could talk about those. So haven't you effectively waived that issue? Well, two things, Your Honor. First, if you look at the government's brief on appeal, they actually haven't urged waiver with respect to that issue. I know that's a technical point, but you can waive waiver as well. So if that's the court's reading of the record, then I'm not even sure if you— Well, what's your reading of the record? My reading of the record is that defense counsel was not maybe clear as to what the judge was asking him about. Because the facts of the case are, right, the government had said at the outset, we're going to ask about one prior conviction, the 2012 possession with intent to distribute. And then the defendant elicited or testified about a few of his own convictions after that. And so when this colloquy comes up, the government doesn't say, okay, now we're going to ask about other convictions. It had never suggested before that moment that it was going to ask about any of the other convictions in the record. Well, had you all told him that you were going to put in certain convictions? I mean, it strikes me as— I don't mean to fault the government for not disclosing that ahead of time. What I mean to say is that it's not clear what was in the defense counsel's head at the time when he was having that colloquy with the judge. I see that I have no more time, but I'd like to reserve one minute for rebuttal. Thank you. Thank you very much. Your Honors, I'd just like to make a few brief points in rebuttal if I could. First, Your Honors, my colleague started by indicating his belief that Maryland robbery would only lie for an offensive touching. And I think Judge Motz, as you pointed out, the cases just don't bear that out. If you look at Cooper and West, if my colleague was right, those cases would have come out differently. In other words, they would have affirmed on the basis of those facts. If you look at Cooper, you have an offensive touching, a hand in somebody's pocket that the victim feels, and that snatches the money out of his pocket. That is a de minimis touching, and under Maryland law, it wasn't enough. So what your colleague does, though, is always run back to that language in Snowden, right? And I'm glad to address it. I think one of the things that's interesting about Snowden is not just what I talked about with Judge Diaz initially, that Snowden basically has the same language of West and Cooper, but if you look at cases after Snowden, in other words, what do the precedents in Spencer, for example, say about Snowden? No one is suggesting that Snowden worked any change in Maryland law. In other words, you still see sites to Cooper. You still see sites to West. In other words, no one is saying that the single word in this single case that really isn't even construing the factor that we're talking about here affected this great change that my colleague is suggesting. Because I think it's very true it would be a change. In other words, for the last several centuries, this is the way Maryland law has been. And so I think it's simply not a good reading of Snowden to say that it's this great magnanimous change that all of a sudden lowered the force element in Maryland robbery to this low de minimis battery. In other words, everyone would then be saying, well, Cooper is no longer good law, or West is no longer good law because of what Snowden said. And obviously no court is saying that. So I think it's just simply a wrong reading of Snowden, and it's one that I think this court should reject. There's also some questions about the Aparicio-Soraya case, and I do want to mention it briefly. We mentioned in our reply brief, page 27, footnote 4, about sort of our reaction to that case. But I guess my real reaction is it simply doesn't tell us the answers to the questions that we need to answer here. In other words, that case was about a different statute. We're focused on the force element in Maryland robbery, and we have to look to those cases. Aparicio-Soraya tells us sort of a pathway. In other words, look at Maryland Court of Appeals decisions, Maryland Court of Special Appeals opinions, and we're employing this court to do that too. Look at the Cooper case. Look at the West case. In other words, follow those pathways, and we think it will lead you to the conclusion that the government is postulating here. The last comment that I'll make, Your Honors, is about Stokeling, because there was a suggestion made that the arguments that we're making are somehow misreading Stokeling. So I do want to be clear about this. The specific language that we're relying upon to make this argument. And so Justice Thomas in Stokeling said, Congress made clear that the force required for common law would be sufficient to justify an enhanced sentence under the new elements clause. In other words, he's saying this is what Congress intended, and he went through sort of a long exegesis of what did Congress intend and why did they use the words they used when they adopted the Armed Career Criminal Act. And so I think that's the language that we're relying upon. And Judge Motz, you indicated Dinkins, and what does that tell us? I think it tells us how this court should react to Stokeling. And what the court in Dinkins said is this is how we react. We say now that North Carolina robbery fits and is a violent felony. And so I think consistent with Dinkins in recognition of how to react to Stokeling, we do submit that this court should reverse and find Maryland robbery a violent felony. Thank you very much. Thank you, Your Honors. Sir, you have one minute. Well, I want to first seek this court's permission to discuss the robbery issue. If this court wants to hear about the robbery issue, I'm happy to discuss it, but the posture of this case is such that I have a rebuttal here even though I normally wouldn't. So if this court has questions with respect to that issue, I'm happy to answer them, but I have nothing further on the cross-appeal. Okay. Thank you very much. We will come down and say hello to the lawyers and then go directly to the next case.
judges: Diana Gribbon Motz, Albert Diaz, Stephanie D. Thacker